**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Plaintiff,**

v.

**JAMES T. BARRY CO., INC. and James T. Barry, Jr., Defendants.**

No. 77–C–430.

United States District Court, E. D. Wisconsin.

July 18, 1978.

---

Edward R. Nuss, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for plaintiff.

Donald A. Sands, Walsh & Simon, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Plaintiff in this action has filed a motion to dismiss the defendants' first and second counterclaims and to strike several of the defendants' defenses as insufficient in law.

This action involves suit by the plaintiff, Federal Deposit Insurance Corporation (FDIC), in its corporate capacity as purchaser of a note which had been made by defendant James T. Barry Co., Inc. to the American City Bank and guaranteed by defendant James T. Barry, Jr. On October 21, 1975, by order of the Comptroller of the Currency pursuant to the National Banking Act, American City Bank was declared insolvent and the FDIC was appointed as receiver. Under the power granted to it by 12 U.S.C. § 1823, the FDIC, as receiver, sold the note being sued upon, with the approval of this Court, to the FDIC in its corporate capacity. The corporation is now bringing this action on the note made and guaranteed by the defendants.

The counterclaims for money judgment and rescission asserted by the defendants are based on alleged acts of wrongdoing by the American City Bank. Defendants, by so doing, assert that the corporation, as the receiver of the American City Bank, stands in the shoes of the American City Bank and is, thus, liable for the wrongdoing of the bank. These claims fail to recognize, however, the effect of the sale of the note to FDIC in its corporate capacity. The statute permitting this sale is designed to maximize the liquidation of an insolvent bank while protecting the federal treasury.

The federal banking laws permit the FDIC to act as a receiver and insurer in a bank failure, or to merely act as an insurer. In either case, the purpose of the law is to ensure that when a bank fails there will be little or no disruption of the local banking community.

Upon being appointed receiver in this case, the FDIC sold a large portion of the assets and liabilities of the American City Bank to the Marine National Exchange Bank of Milwaukee. The FDIC, in order to complete the sale, required some additional cash to balance the transfer to the Marine Bank. Consequently, the note in question was sold to the FDIC to supply the necessary funds.

The counterclaims of the defendants are based upon common law fraud and violations of state and federal securities laws. The plaintiff has moved to dismiss these counterclaims as, in effect, not asserted against the proper party. Since this is an action on a note by the FDIC in its corporate capacity, the FDIC, in its receiver capacity, is not before the Court. In this suit, recovery or rescission against the FDIC on the counterclaims would involve loss from the federal treasury. Any claims by the defendants for wrongful acts committed by the American City Bank are properly submitted to the receiver of the bank, FDIC, in that capacity, but payable out of assets of the insolvent American City Bank.

■ Defendants argue that the FDIC is before the Court ignoring the statutory capacities. This is an incorrect characterization of the law which fails to recognize the purpose of the applicable federal banking

statutes. Section 1823(e) of Title 12 of the United States Code provides that the FDIC can purchase the assets of an insolvent bank to facilitate the sale of assets and assumption of liabilities of the closed bank by another bank. Section 1823(e) provides further:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

The effect of this statute is to insulate the FDIC in its corporate capacity from any claims the defendant has against the insolvent bank. *See Federal Dep. Ins. Corp. v. Vogel,* 437 F.Supp. 660, 665 (E.D.Wis.1977). Thus, the defendants' counterclaims must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure as failing to state a claim upon which relief can be granted.

Plaintiff FDIC has also filed a motion under Rule 12(f) of the Federal Rules of Civil Procedure to strike certain of the defenses as insufficient at law. The FDIC is moving to strike the second, third, and fourth defenses to the first cause of action and second, third and fourth defenses to the second cause of action, all based upon alleged violation of the federal and state securities laws. Since this Court finds that the underlying transaction supporting this note may involve a security, these defenses will not be stricken.

Defendants allege in their answer that the American City Bank acted as an intermediary between the James T. Barry Co. and Gebhardt Incorporated in a real estate transaction. Gebhardt, a debtor of the bank, was having financial trouble and in order to raise capital, sold a one-half interest in its building to Barry with a leaseback of the portion that was sold. Gebhardt, it is alleged, was known by John P. Hanrahan, a loan officer of the American City Bank, to be suffering financially. It is alleged that Hanrahan handled Gebhardt's loans with the bank and as such was aware of Gebhardt's serious financial plight.

The Barry Co. purchased the one-half interest in Gebhardt's building for $80,000, of which $25,000 was supplied from the general funds of the Barry Co., and of which $55,000 was paid from the proceeds of a loan from the American City Bank. Barry Co. made a note to the Bank guaranteed by James Barry. It is this note, coupled with the investment in the Gebhardt building that forms the basis of the defendants' claim that a security is involved. Defendants further allege that the surrounding circumstances involve a violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b–5 under the Exchange Act and Wis.Stats. § 551.41 (West 1977).

Pursuant to this real estate leaseback arrangement, representatives of Gebhardt and American City Bank made representations to the Barry Co. that Gebhardt was financially sound, when, it is alleged, they knew Gebhardt was on the verge of committing an act of bankruptcy and lacked sufficient funds to pay its past due accounts. Defendants allege that at all times they were unaware of Gebhardt's financial condition. Defendants further claim that in reliance on the representations they entered into this sale-leaseback arrangement, the purpose of which was to postpone or avoid the failure of Gebhardt, Inc.

Gebhardt filed Chapter XI bankruptcy subsequent to the sale-leaseback and the receiver appointed by the bankruptcy court sold the real estate subject to the land contract, placing $49,500 in escrow pending the results of this action. Defendants' fed-

eral and state securities violations are based upon these alleged facts.

The test for a motion to strike a defense requires that "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." 2A Moore's Fed.Prac. ¶ 12.-21 at 2431. *See Taylor v. Orton,* 216 F.2d 62, 64 (7th Cir. 1954). As applied to this case, the question is whether there is a security involved and if so, whether a securities violation occurred.

The classic definition of a security was set out by the United States Supreme Court in *S. E. C. v. W. J. Howey & Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). The Court defined an investment contract as:

> a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.

Section 2 of Securities Act of 1933 defines a security as an "investment contract" and defendant is alleging such an arrangement. However, the Court in *Howey* was discussing investments in an orange grove where the investors lived a great distance from the groves and purchased only a minor portion of the grove. The Court found that:

> Such persons have no desire to occupy the land or to develop it themselves; they are attracted solely by the prospects of a return on their investment. Indeed, individual development of the plots of land that are offered and sold would seldom be economically feasible due to their small size. Such tracts gain utility as citrus groves only when cultivated and developed as component parts of a larger area. A common enterprise managed by respondents or third parties with adequate personnel and equipment is therefore essential if the investors are to achieve their paramount aim of a return on their investments. *S. E. C. v. W. J. Howey,* 328 U.S. at 300, 66 S.Ct. at 1103.

The Court then characterized the nature of the described investments:

The transactions in this case clearly involve investment contracts as so defined. The respondent companies are offering something more than fee simple interests in land, something different from a farm or orchard coupled with management services. They are offering an opportunity to contribute money and to share in the profits of a large citrus fruit enterprise managed and partly owned by respondents. They are offering this opportunity to persons who reside in distant localities and who lack the equipment and experience requisite to the cultivation, harvesting and marketing of the citrus products. *Id.* at 299–300, 66 S.Ct. at 1103.

The *Howey* test was restated in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) wherein the Supreme Court commented:

> This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court has meant either capital appreciation resulting from the development of the initial investment . . . or a participating in earnings resulting from the use of investors' funds . . . . *Id.* at 852, 95 S.Ct. at 2060.

In *Fargo Partners v. Dain Corporation,* 405 F.Supp. 739 (D.N.D.1975) the court discussed a sale-leaseback arrangement similar to that involved in the present case. In *Fargo* the plaintiff had purchased an apartment complex from the defendants and granted back to the defendants the exclusive control and management. The Court in *Fargo* found that the sale-grantback did not involve a security stating:

> There is nothing in the pleadings, the prospectus, or any part of the record to establish that defendants were seeking Fargo's money for anything other than a sale of some developed real estate. The

money was not to be used on a continuing development in which both parties would profit from the entrepreneurial efforts of the seller. The seller agreed to manage the property to be owned in its entirety by the buyer for a sum equal to 5% of gross rental and for a term of 36 months. The management fees were not related to net profits. *Id.* at 743.

■ This Court finds that the situation as alleged in the defendants' pleadings is similar to that in *Fargo*, but yet distinct enough as alleged to force this Court to deny the plaintiff's motion to strike the securities related defenses. The defendants' one-half interest in the Gebhardt building relied totally upon the lease with Gebhardt for any profits to be derived from the investment. Although this Court has serious doubts whether a security is, in fact, involved under the facts as alleged, in light of the broad definition of a security and the stringent test on a motion to strike a defense, the plaintiff's motion must be denied.

This Court notes that the strong language of 12 U.S.C. § 1823(e) makes the validity of any of these defenses questionable, but since this issue has not been presented to the Court, judgment on that issue is reserved.

Therefore, in light of the foregoing discussion, the plaintiff's motion to dismiss the defendants' counterclaims is GRANTED, the plaintiff's motion to strike the second, third and fourth defenses to the first cause of action and the second, third and fourth defenses to the second cause of action is DENIED.