**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**Lynwood G. WILLIS, Robert H. Still, Jr., Richard J. Veenstra, and Roger R. Rowell, Defendants.**

**Civ. A. No. 179–63.**

United States District Court, S. D. Georgia, Augusta Division.

Aug. 11, 1980.

---

William A. Trotter, III, Augusta, Ga., for plaintiff.

Thomas M. Baumer, Mahoney, Hadlow & Adams, Douglas P. McClurg, Jacksonville, Fla., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BOWEN, District Judge.

Presently before the Court is the motion of the plaintiff in the captioned case for summary judgment against the defendants. Summary judgment should be granted and is hereby ordered. Facts of moderate complexity combine with the applicable law to achieve an uncomplicated result. Under Fed.R.Civ.P. 52(a), an order granting summary judgment needs no accompanying elucidation. The Fifth Circuit, however, has noted that either the order or the record should afford sufficient grounds for effective review. See Stone v. Regents of University System, 620 F.2d 526 (5th Cir. 1980). An explanation of the processes which brought about this judgment follows.

## UNDISPUTED FACTS

First Augusta Bank and Trust Company, hereinafter called First Augusta, was a banking corporation organized and existing under the laws of the state of Georgia. Its deposits were insured by the Federal Deposit Insurance Corporation, the plaintiff herein, hereinafter called FDIC. First Augusta closed on May 20, 1977, and FDIC eventually acquired some of the bank's assets in its corporate capacity. Among the assets acquired were the note and guaranty upon which plaintiff has filed suit against these defendants.

The defendants are professional people who were interested in a real estate development investment in Columbia County, near Augusta, Georgia. Defendants Willis and Veenstra are architects, and defendants Still and Rowell are medical doctors. These defendants are sued by the plaintiff FDIC upon the note and guaranty agreement executed by them and appended hereto as Exhibits "A" and "B". Willis is the maker of the promissory note and the remaining defendants signed the guaranty agreement.

After giving notice through its attorneys of the intention to proceed at law and to collect attorney's fees as permitted by Ga. Code Section 20–506, plaintiff FDIC commenced this suit on March 17, 1979. The complaint alleges that the FDIC is the successor in interest to certain assets of the First Augusta. The complaint alleges that in September, 1976, defendant Willis executed and delivered a promissory note in the principal sum of $144,186.91 to First Augusta and that the note is in default. The complaint further alleges that defendants Still, Veenstra and Rowell are jointly and severally liable for the payment of the note made by defendant Willis by virtue of a written guaranty made in October, 1975. The plaintiff demands judgment for the principal amount of the note, together with interest and attorney's fees.

The defendants filed motions to dismiss the complaint on several grounds but the motions were denied by the order of the Honorable Anthony A. Alaimo, Chief Judge of this district. Subsequently, the defendants filed an answer to the complaint denying all of the material allegations including the allegation that they are liable to the FDIC. In their responsive pleadings, defendants raised the following affirmative defenses: (i) lack of personal jurisdiction (Veenstra and Still only), (ii) release, waiver and estoppel, (iii) limited liability (Veenstra, Still and Rowell, only), and (iv) fraudulent inducement.

In 1971, defendants formed a limited partnership known as Stevens Creek of Jacksonville, Ltd. These four parties will be referred to collectively as the Jacksonville Group. At the same time, C. E. Hodges, Jack Fink, Peter Menk, G. B. Hester, Jerry Dye and Mark Darnell formed a limited partnership known as Stevens Creek of Augusta, Ltd. These six persons will be referred to collectively as the Augusta Group. The two limited partnerships entered into a joint venture, the purpose of which was to develop approximately 20 acres of real property in Columbia County, Georgia, adjacent to a country club. The joint venture was to build residential units to be known as the Stevens Creek Townhouses. The Georgia Railroad Bank & Trust Company, hereinafter called "the Georgia", made a construction loan to the

joint venture in May, 1971. At the time of the original loan, the Georgia took a security deed over the entire 20 acre tract owned by the joint venture. Funded by the loan from the Georgia and subsequent advances, the joint venture completed construction of Phases I and II of the project, consisting of 21 units.

By early 1974, all of the units in Phases I and II had been sold, and the debt owing to the Georgia stood at approximately $75,-000.00. At that time, the Georgia committed to make a construction loan to the joint venture in the amount of $750,000.00, the proceeds of which were to be used to construct Phase III, consisting of 19 units. The joint venture constructed the Phase III units but encountered difficulty in selling them.

In October, 1975, the total indebtedness owed by the joint venture to the Georgia was approximately $1,000,000.00. At that time, the loan was still secured by the original security deed to the 20 acres. The townhouse development is constructed on approximately 6 acres and the remaining 14 acres owned by the joint venture is undeveloped. Presumably the townhouses sold were released from the Georgia's debt deed *pro tanto*.

In October, 1975, the Georgia and the individual members of the joint venture orally agreed to a modification of the loan. Under the modification, the overall loan was to be divided into 19 separate loans, each to be secured by one of the 19 units of Phase III of the project. The separate loans were to be made to the various individual members of the joint venture. This portion of the agreement resulted in a refinancing of approximately $900,000.00 of the total outstanding indebtedness. The remaining balance of approximately $100,-000.00 was to be paid in cash at the time of the modification.

In order to make their portion of the $100,000.00 cash payment to the Georgia, Willis of the Jacksonville Group was to borrow the amount required from First Augusta. At that time, Willis, the general partner of the Jacksonville group, was already indebted to the First Augusta, in the approximate amount of $80,000.00. For the purpose of this motion only, it is assumed *arguendo* that there is evidence showing that as a part of the modification transaction, the Georgia agreed to release the undeveloped approximately 14 acres, to which it held a security deed, so that the property could be used as security for the loan to be obtained by Willis at First Augusta.

In connection with the loan obtained by Willis from the First Augusta in October, 1975, an officer of the bank, Ronnie Bolton, prepared a document entitled "Offering Sheet." The offering sheet is a regular business record of the First Augusta and is customarily prepared before a loan is submitted to the loan committee for approval. The particular offering sheet prepared in connection with the October, 1975, loan to Willis states that the proposed amount of the loan is $132,959.15 and that the loan is to be secured by a security deed to 15 acres of real estate. The variation in the number of acres is of no importance here.

The loan was approved and Willis executed a promissory note dated October 31, 1975, in the original principal sum of $132,-959.15. The promissory note states on its face that it is secured by "Security Deed on file". Since the loan evidenced by the promissory note was a renewal in part, the First Augusta actually disbursed approximately $52,000.00. The sum was disbursed by check made payable to the joint venture which was deposited in the joint venture's account at the Georgia.

The note that is the subject of this lawsuit is dated September 16, 1976, and it is a renewal of the October 31, 1975, note. The September, 1976, note states on its face that it is secured by "Security Deed on File. Fifteen (15) Acres in West Lake Sub-division, Columbia County, Georgia. Also Guarantees on file."

As stated, the original promissory note and the guaranty agreement executed by the defendants were dated October 31, 1975. Bearing the same date were deeds from the joint venture to each of the defendants and deeds to secure debt from each of the de-

fendants to the Georgia which conveyed the individual townhouse units. These deeds and debt deeds were given in consummation of the plan for the restructuring of the Georgia's loan.

In addition to the recitation of collateral held by the First Augusta that appears on the faces of the October, 1975, and September, 1976, promissory notes, Willis contends that he was orally assured by an officer of the bank that the loan was secured. Additionally, defendants contend that Mr. G. B. Hester, who was a director of First Augusta, a member of the Augusta Group, and an attorney in the law firm that was general counsel for the First Augusta, assured Willis that the loan was secured.

Willis, as general partner of the Jacksonville Group, in turn assured the limited partners of the group, Still, Veenstra and Rowell, that the loan was secured. Willis contends that, in reliance on these representations, he executed the October, 1975, promissory note and Still, Veenstra and Rowell executed the guaranty. Defendants contend that the September renewal note was executed by Willis based on his continued belief that the loan was secured.

The original offering sheet and the original promissory notes made in October, 1975, and September, 1976, were a part of the records of the First Augusta at the time the FDIC purchased the loan that is the subject of this action as an asset.

Defendant Lynwood G. Willis is the general partner of Stevens Creek of Jacksonville, Ltd., a limited partnership created by agreement dated January 13, 1971. The partners, their capital contribution and their percentage of interest in the partnership are as follows:

| NAME | TYPE | CAPITAL | INTEREST |
|---|---|---|---|
| Lynwood G. Willis | General Partner | $100.00 | 28⅓% |
| Richard J. Veenstra | Limited Partner | 100.00 | 28⅓% |
| Robert H. Still | Limited Partner | 100.00 | 28⅓% |
| Roger R. Rowell | Limited Partner | 100.00 | 15% |

Consistent with their partnership interests, the defendants have executed Exhibits "A" and "B" indicating the percentage of

their exposure in the transaction with First Augusta in the following manner:

| Lynwood G. Willis | Maker of Note | 100% liability |
|---|---|---|
| Richard J. Veenstra | Guarantor | 28.33% liability |
| Robert H. Still | Guarantor | 28.33% liability |
| Roger R. Rowell | Guarantor | 15% liability |

Thus, under any reasonable construction of the note and guaranty agreement, taken together, the intended percentages of liability, as between the partners, were entirely consistent with the terms of the limited partnership agreement.

The foregoing statement of facts upon which this order is based has been taken largely from the defendants' pleadings and assertions.

## CONCLUSIONS OF LAW

Summary judgment is a useful device, but it must be used cautiously or it may lead to drastic and lethal results. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). A court is governed by stringent criteria, and it cannot grant summary judgment if the record contains any demonstration that a genuine issue of material fact exists. *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406 (5th Cir. 1980).

On a motion for summary judgment, the burden is on the moving party to show that no doubt exists as to the facts and that only legal conclusions remain. *Clark v. West Chemical Products, Inc.*, 557 F.2d 1155 (5th Cir. 1977). Actions to enforce promissory notes are among the most suitable classes of cases for summary judgment, especially when the moving party shows execution, delivery and amount of the note. *Lloyd v. Lawrence*, 472 F.2d 313 (5th Cir. 1973). If all inferences from the remaining facts are drawn in favor of the party opposing the motion, *see Am. Tel. & Tel. Co. v. Delta Communications Corp.*, 590 F.2d 100 (5th Cir. 1979), the only question for this Court is whether the defendants' affirmative defenses are legally sufficient.

### I

The defense of lack of *in personam* jurisdiction contended by defendants Veenstra

and Still is without merit. This defense has been previously raised on the defendants' motion to dismiss which was denied by the Chief Judge of this Court on May 15, 1979. The matter of this Court's personal jurisdiction over these defendants has been extensively explored by the Court, argued by counsel and stated in counsel's briefs. No further discussion of this defense is warranted in this order.

## II

All of the defendants contend that the officers, directors, employees and attorneys of First Augusta materially altered the terms and conditions of the indebtedness upon which FDIC now sues. Defendants also contend that the First Augusta was negligent in failing to acquire, preserve and protect the collateral that was originally intended to secure the indebtedness. By the course of conduct aforementioned, defendants maintain that they have been released from any obligation under the note and guaranty, that the conduct aforementioned on the part of plaintiff's predecessor in interest amounts to a waiver of its right to enforce the obligation against these defendants, or, that the plaintiff is now estopped from collecting on the note and guaranty against these defendants who have relied on the aforementioned conduct of First Augusta.

The actual damage which may have flowed to the defendants by way of First Augusta's failure to acquire collateral will be more amply discussed elsewhere in this order. Also discussed elsewhere is the conduct of the First Augusta through its agents at the time of the creation of the obligations. This section of the order deals only with the concepts of release, waiver and estoppel proposed by the defendants based upon conduct of First Augusta, through its agents, after the execution of the note and guaranty. These defenses are without merit.

Neither the First Augusta and Trust Company nor the Federal Deposit Insurance Corporation *as receiver of First Augusta* are parties to this action. Here, the FDIC appears as plaintiff in its corporate role. This issue has been similarly decided in the case of *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga.1979), wherein the Court held that:

> In its corporate role, the FDIC is an insurer and is not saddled with liabilities of the insolvent bank. Any references to holder in due course status are equally irrelevant since the statutory framework relied on by the plaintiff is based on the federal public policy protecting the institution of banking. *Dasco, Inc. v. American City Bank and Trust Co.*, 429 F.Supp. 767 (D.Nev.1977).

Congressional intent in this matter is clearly indicated in 12 U.S.C. § 1823(e). Section 1823(e) provides that the FDIC can purchase the assets of an insolvent bank to facilitate the sale of assets and assumption of liabilities of the closed bank by another bank. That section further provides that:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

It has been held that the effect of section 1823(e) is to insulate the FDIC, in its corporate capacity, from any claims a defendant may have against the insolvent bank. See, *FDIC v. James T. Barry Co.*, 453 F.Supp. 81 (E.D.Wis.1978). While this Court need not go that far it is clear that the quoted section, "operates to insure that the FDIC, when it expends

moneys intrusted to it to purchase assets of a closed insured bank, can rely on the bank's records and will not be risking an impairment of the assets through an agreement not contained in the bank's records" *FDIC v. Vogel*, 437 F.Supp. 660, 663 (E.D.Wis.1977).

In the present action, section 1823(e) protects the plaintiff from any potential liability from defendants' counterclaims. This means that no money judgment is available to the defendants' nor may their counterclaims act as a set–off to diminish any recovery by the plaintiff. Any actions based on the counterclaims must be brought against the FDIC in its capacity as receiver for the insolvent bank.

In *FDIC v. James T. Barry Co., Inc.*, 453 F.Supp. 81, 83 (E.D.Wis.1978), the court noted that the purpose of 12 U.S.C. § 1823(e) is to insulate the FDIC in its corporate capacity from any claims which the defendant has against the insolvent bank (FAB). The court stated:

Thus, the defendants' counterclaims must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure as failing to state a claim upon which relief can be granted.

In *FDIC v. Vogel, et al.*, 437 F.Supp. 660 (E.D.Wis.1977) at page 663, the court held:

Once the FDIC, acting in its corporate capacity, purchases the assets of the closed bank, it is simply not a successor in interest to the closed bank. Section 1823(e) provides it with more protection than the bank or its receiver. The fact that the receiver in this case is also the FDIC does not change the result. Section 1823 expressly allows the FDIC as receiver to sell the assets of a closed bank to the FDIC in its corporate capacity.

Also, as a matter of state law, defendants' affirmative defenses for obligations of the defunct bank to obtain collateral for the loan which is the subject of this action cannot be asserted against the FDIC in its corporate capacity. Ga.Code § 41A–802, which is a part of the Financial Institutions Code of Georgia (Code § 41A–101, et seq.), gives an exclusive remedy for such claims.

41A–802. *Exclusivity of Claims Procedure.* All claims against the financial institution, suit upon which has not been commenced prior to the time the department took possession, shall be presented in the regular manner provided by this Code for the presentation of claims.

The succeeding sections of the statute go on to describe the procedure for asserting a claim which involves the making of claims to the receiver of the bank and litigation in *state* court if there remains a dispute between the claimant and the receiver. Ga. Code § 41A–810. This procedure under state law is an exclusive remedy. The defenses of the defendants against the defunct bank are precisely contemplated by Code § 41A–802. Those defenses may not be asserted against FDIC in its corporate capacity in this federal litigation.

■ Thus, any counterclaim, setoff, waiver, release or estoppel which may very legitimately lie in favor of these defendants, or any action therefor based upon the facts contended by these defendants, would lie only against First Augusta, not against the FDIC in its corporate capacity. Accordingly, these defenses are of no avail to the defendants.

### III

Defendants Veenstra, Still and Rowell contend that their liability, if any, is limited in the aggregate to a total sum of $132,-959.15 which was the amount stated in Exhibit "B" and in the note of which Exhibit "A" is a renewal. These three defendants also assert that they are individually liable only for a portion of the aggregate liability shown on the face of the guaranty instrument equal to the percentage thereof shown for each thereon. This defense is meritorious in part.

The amount of a guarantor's liability may be limited by the terms of the contract of guaranty. *Brinson v. Commercial Bank*, 138 Ga.App. 177, 225 S.E.2d 701 (1976). The contract here specifies that the guarantors are liable for the sum of $132,959.15 plus

interest and the expenses of enforcing the guaranty. Unlike the note evidencing the principal obligation of Willis, however, the contract contains no stipulated rate for interest or attorney's fees.

■ This guaranty was entered into by a separate instrument, and the guarantors are bound only by terms upon which they have agreed. When such a guaranty does not contain a stipulated interest rate, the guarantors are liable only for the legal rate of seven per cent annually. Ga.Code § 57–101 (Acts 1975); *see also* 38 C.J.S. Guarantors § 57. Similarly, if a note or other evidence of indebtedness provides for reasonable attorney's fees without specifying a certain percentage, then Ga.Code § 20–506(b) directs "that such provision shall be construed to mean 15% of the first $500.00 principal and interest owing . . . and 10% of the amount of principal and interest owing thereon in excess of $500.00" (*See Goldstein v. Ipswich Hosiery Co.*, 104 Ga. App. 500, 122 S.E.2d 339 (1961), holding that guaranty contracts are within the scope of § 20–506).

■ A proper demand was made as required by Ga.Code § 20–506(c) and all of the defendants failed or refused to pay the amount owed to plaintiff. Thus, the sum stated in the guaranty has been increased by the accrual of interest and the "acceleration" of attorney's fees or "expenses of enforcing" the guaranty.

■ If the guaranty is read separately and out of the context of the entire transaction, the percentage figures appearing by the names of defendants Veenstra, Still and Rowell would not add up to 100% and would not make sense. But, when that instrument is read together with the note and in the context of the entire transaction, it is a foregone conclusion that the limited partners intended to guarantee only that portion of the indebtedness which was equal to their percentage of the limited partnership interest. Clearly, acceptance of this guaranty by First Augusta on the same conditions was always intended. Reasonable jurors could draw no other conclusion.

## IV

A careful analysis of the main defense asserted by the defendants leaves it unavailing. Defendants contend that they were defrauded when induced to enter the loan and guaranty transaction with First Augusta. There is scant evidence on the background of the negotiations, but defendants' allegations of fact may be assumed *arguendo* for the purpose of plaintiff's motion. *See Camilla Cotton Oil Co. v. Spencer Kellogg & Sons*, 257 F.2d 162 (5th Cir. 1958). In that regard, it will be assumed that a bank officer and a bank director and attorney assured Willis that the loan would be secured by the 14 (or 15) acres of land, just as is stated on the note and offering sheet. It will be further assumed that such representations were false and knowingly made.

■ There are two types of contract fraud generally recognized by courts. One is fraud in the inducement, or fraudulent representation, and the other is fraud in the factum. The United States Supreme Court set out these tests or elements of proof for fraudulent representation in the venerable case of *Farrar v. Churchill*, 135 U.S. 609, 10 S.Ct. 771, 34 L.Ed. 246 (1889):

> The general principles applicable to cases of fraudulent representation are well settled. Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false and must be acted upon by the other party in ignorance of its falsity and with a reasonable belief that it was true. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause, if it were proximate, immediate and material. If the purchaser investigates for himself and nothing is done to prevent his investigation from being as full as he chooses, he cannot say that he relied on the vendor's representations. *Southern Development Company v. Silva*, 125 U.S. 247 [, 8 S.Ct. 881, 31 L.Ed. 678.] "If the

party to whom the representations were made," remarked Lord Langdale, in *Clapham v. Shillito*, 7 Beavan, 146, 149, "himself resorted to the proper means of verification, before he entered into the contract, it may appear that he relied on the result of his own investigation and inquiry, and not upon the representations made to him by the other party; or if the means of investigation and verification be at hand, and the attention of the party receiving the representations be drawn to them, the circumstances of the case may be such, as to make it incumbent on a court of justice to impute to him a knowledge of the result, which, upon due inquiry, he ought to have obtained, and thus the notion of reliance on the representations made to him may be excluded."

■ One asserting the defense of fraudulent representation or fraud in the inducement attacks the agreements underlying a contract, not the validity of the contract itself. In contrast, fraud in the factum is a defense which attacks the truth of the essential terms of the contract. For example, fraud in the factum exists when there is a substitution of instruments unknown to the maker. *See FDIC v. Balistreri*, 470 F.Supp. 752 (E.D.Wis.1979); *Citizens National Bank v. Brazil*, 141 Ga.App. 388, 233 S.E.2d 482 (1977).

■ At least one court has held that 12 U.S.C. § 1823(e) provides the FDIC, in its corporate capacity, with the protections afforded a holder in due course. *FDIC v. Rockelman*, 460 F.Supp. 999 (E.D.Wis.1978) and *FDIC v. Balistreri* cited *supra*. Under the Uniform Commercial Code, the defense of fraud in the inducement cannot be asserted against a holder in due course. There is no protection against a defense of fraud in the factum, however. *See* U.C.C. § 109A–3–302. Therefore, under this theory, the fraud which defendants attempt to show must be in the factum, or within the loan instrument itself. Such a defense fails, however, because the essential terms of the note are correct. Willis bargained for and received a loan in the amount of $144,186.91. The fact that the instrument incorrectly reflects that the loan was secured does not affect the validity of the underlying transaction.

The provisions of the U.C.C. which protect a holder in due course from a defense of fraud in the inducement have been codified in the state of Georgia. *See* Ga.Code § 109A–3–305. This Court is not bound by the theory that § 1823(e) provides the FDIC with this same protection, however. Even if the defendants are not precluded from asserting fraud in the inducement, there are other reasons that such a defense would be legally insufficient.

It should be noted that each of the defendants is a professional person. The general partner is an architect and the limited partners are one architect and two physicians. Education and ability are prerequisites for the practice of either profession. The general partner has assumed no small responsibility under the terms of the limited partnership agreement and the defendants had every reason to know that they were involved in a major investment and development project. The very size of the transactions would dictate at least some need for caution by all of the partners, general and limited.

Each of the defendant–partners signed a debt deed dated October 31, 1979. They were not entirely unfamiliar with such transactions. But, none of the defendants contend, assert, allege, maintain or state in any way that they signed any deed to secure debt to collateralize the loan at First Augusta. There is no evidence whatsoever as to the existence of any separate deed to secure debt.

■ Defendants do state that they assumed that the security interest held by the Georgia would be transferred to protect the interest of First Augusta. While this assumption as a part of defendants' principal defense seems disingenuous at best, the Court, on this motion, must assume the ultimate credulity of the general and limited partners. Notwithstanding their assertions of reliance on the false representa-

tions of the bank's agent and their assumption about the transcendence or metamorphosis of the security interest, no collateral could have been taken, nor any security interest in land conveyed to First Augusta without the direct, overt and personal act of at least the general partner. No mortgage, deed to secure debt or deed of trust may be created in Georgia unless it be in writing and properly witnessed and executed by the owner of an interest in the land. Ga.Code § 20–401(4). No new mortgage, deed of trust or deed to secure debt was prepared, signed, or even alleged, by any of the defendants.

 The Georgia could not have transferred all or a portion of its deed to secure debt to First Augusta so that it would secure the October 31, 1975 promissory note. Even if the deed contained an "open–end clause" which applied the security to subsequent debts, such a provision would operate only between original parties. Ga.Code § 67–1316. As a transferee of the security deed, First Augusta would have been entitled to the same rights and privileges held by the Georgia, but it would not have obtained security for advances made by it. *Bowen v. Kicklighter*, 124 Ga. App. 83, 183 S.E.2d 10 (1971). A transferee may not enforce under an open–end clause a new indebtedness between him and an original party to the deed. *McCollough v. Georgia Railroad Bank & Trust Company*, 144 Ga.App. 698, 242 S.E.2d 271 (1978). Thus, what the defendants contend that they assumed and relied upon was a legal impossibility and a factual improbability. It is extremely doubtful that any reasonable juror would believe that a physician or architect assumed or believed that a mortgage, deed to secure debt or deed of trust could be created upon that person's land voluntarily, without even a signature, by a simple wish that it be so.

Another question of equal importance is whether the defendants have suffered any harm, or sufficient harm, to avoid payment to the plaintiff. If the guarantors of this promissory note were not in any way related to the transaction or the land, then false representations that the note was in fact secured by real estate of adequate value would be of great importance. Here, however, the guarantors were, in effect, the owners of the land and they complain that First Augusta failed to acquire a security interest in land which they still own. Now, if First Augusta had acquired a security interest in the land, their equity of redemption in the property would have been correspondingly reduced. On the other hand, if there was no equity of redemption, the security interest acquired by First Augusta would have been valueless and therefore of no avail to these defendants. That they have been harmed by the failure of the bank to acquire the security interest (as they assumed it would) seems to be a logical *non sequitur*. In order for the bank to acquire a security interest which would in any way protect the guarantors, those same guarantors would have to surrender equity of equal value.

 The defendants' claim that they should not be required to pay plaintiff because First Augusta did not acquire a security interest in their own land is a translucent, if not transparent, rationalization. This defense pales even more in the light of the facts that the defendants themselves, through their designated general partner, actually received the money borrowed.

This order is not dispositive of any rights or causes of action which may exist between the general and limited partners or between those partners and the Georgia, or between the partners and the now defunct First Augusta Bank and Trust Company. It is, however, dispositive of the rights and the cause of action existing between the plaintiff FDIC and the defendant–partners. The promissory note (Exhibit "A") executed by general partner Lynwood G. Willis and guaranteed by defendants Veenstra, Still and Rowell, is a valid and enforceable obligation in the hands of the FDIC *qua* corporation.

## EXHIBIT A

7292485 0001 9900 10 51

**CONSUMER COLLATERAL NOTE**

SP 17 '76

| | | |
|---|---|---|
| 1 Amount of Loan 144,186.91 $ | ANNUAL PERCENT-AGE RATE* 9 % | Date 9-16-76 |
| 2 Credit Life Insurance $ -0- . | 5. Interest $ 13,157.05 | Number |
| 3. Other Charges (Specify) $ -0- | 6. Loan Fee $ -0- | Due 9-16-77 |
| 4. Amount Financed (1 + 2 + 3) $ 144,186.91 | 7. FINANCE CHARGE (5 + 6)* $ 13,157.05 | 8 Total of Payments (4 + 7)* $ 157,343.96 |

365 Days _____ After date,
the undersigned promises to pay to the order of

**FIRST AUGUSTA STATE BANK, AUGUSTA, GEORGIA 30903**

(hereafter, together with any holder hereof, called "Holder"), at its office or at such place as the Holder may designate and notify undersigned, the amount shown hereon as Amount Financed with interest thereon from date until paid in full at the rate of ___9___% per annum, together with the Base Charge shown hereon and with all costs of collection including 15% as attorneys fees if collected by law or through an attorney at law. In the event of prepayment, the FINANCE CHARGE after first deducting a Base Charge of $ _____ will be earned daily on a pro rata basis. The term "Collateral" as used herein, shall mean the following property which has been or is hereby delivered, pledged, assigned, conveyed and transferred to the Holder:

*On demand notes these items are based on 6 months maturity pursuant to Federal Regulation

Security Deed on File. Fifteen (15) Acres in West Lake Sub-division, Columbia County, Georgia. Also Guarantees on file.

[dense small-print legal body text]

| | |
|---|---|
| OFFICER | RENEWAL |

Insurance Statement: Credit Life Insurance is not a condition of this loan.
☐ Loan not eligible for Credit Life Insurance
I ☐ request ☐ decline Credit Life Insurance. Date of birth_____ Date_____ Signature_____

Signed, sealed and delivered by the undersigned who hereby acknowledges receipt of a completed copy hereof

415 East Monroe Street (Seal)
Mailing Address

Jacksonville, Florida 32202 Telephone Number Lynwood G. Willis
City State Zip Code (Seal)

S S No. PEN. I.L. 4649137

## EXHIBIT B

### GUARANTY

**FIRST AUGUSTA STATE BANK**
**AUGUSTA, GEORGIA**

FOR VALUE RECEIVED, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommo-
dation heretofore or hereafter at any time made or granted to Lynwood G. Willis

Augusta, Georgia

(hereinafter called the "Debtor") by FIRST AUGUSTA STATE BANK _____ (hereinafter, together with its successors and assigns, called the "Bank"), the undersigned hereby unconditionally guarantee(s) the full and prompt payment when due, whether by declaration or otherwise, and at all times hereafter, of all obligations of the Debtor to the Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due (collectively called "Liabilities"), and the undersigned further agree(s) to pay all expenses (including attorneys' fees) paid or incurred by the Bank in endeavoring to collect the Liabilities, or any part thereof, and in enforcing

this guaranty. The right of recovery against the undersigned is, however, limited to the amount of One Hundred Thirty-two Thousand Nine Hundred Fifty-nine & 15/100 Dollars ($ 132,959.15 _____ ), plus interest on such amount and plus all expenses of enforcing this guaranty.

Undersigned hereby transfers and conveys to the Bank any and all balances, credits, deposits, accounts, items and monies of the undersigned now or hereafter with the Bank, and the Bank is hereby given a lien upon security title to and a security interest in all property of the undersigned of every kind and description now or hereafter in the possession or control of the Bank for any reason, including all dividends and distributions on or other rights in connection therewith.

In the event of the death, incompetency, dissolution or insolvency (as defined by the Uniform Commercial Code as in effect at that time in Georgia) of the Debtor, or if a petition in bankruptcy be filed by or against the Debtor, or if a receiver be appointed for any part of the property or assets of the Debtor, or if any judgment be entered against the Debtor, or if the Bank shall feel insecure with respect to Liabilities and if any such event should occur at a time when any of the Liabilities may not then be due and payable, the undersigned agrees to pay to the Bank upon demand the full amount which would be payable hereunder by the undersigned if all Liabilities were then due and payable.

Bank may, without demand or notice of any kind, at any time when any amount shall be due and payable hereunder by any of the undersigned, appropriate and apply toward the payment of such amount, and in such order of application as the Bank may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of such undersigned in the possession or control of the Bank for any purpose.

This guaranty shall be continuing, absolute and unconditional and shall remain in full force and effect as to the undersigned, subject to discontinuance of this guaranty as to any of the undersigned (including, without limitation, any undersigned who shall become deceased, incompetent or dissolved) only as follows: Any of the undersigned, and any person duly authorized and acting on behalf of any of the undersigned, may give written notice to the Bank of discontinuance of this guaranty as to the undersigned by whom or on whose behalf such notice is given, but no such notice shall be effective in any respect until it is actually received by the Bank and no such notice shall affect or impair the obligations hereunder of the undersigned by whom or on whose behalf such notice is given with respect to any Liabilities existing at the date of receipt of such notice by the Bank, any interest thereon or any expenses paid or incurred by the Bank in endeavoring to collect such Liabilities, or any part thereof, and in enforcing this guaranty against such undersigned. Any such notice of discontinuance by or on behalf of any of the undersigned shall not affect or impair the obligations hereunder of any other of the undersigned.

The Bank may, from time to time, without notice to the undersigned (or any of them), (a) retain or obtain a security interest in any property to secure any of the Liabilities or any obligation hereunder, (b) retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned, with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period), alter or exchange any of the Liabilities, (d) release or compromise any liability of any of the undersigned hereunder or any liability of any other party or parties primarily or secondarily liable on any of the Liabilities, (e) release its security interest, if any, in all or any property securing any of the Liabilities or any obligation hereunder and permit any substitution or exchange for any such property, and (f) resort to the undersigned (or any of them) for payment of any of the Liabilities, whether or not the Bank shall have resorted to any property securing any of the Liabilities or any obligation hereunder or shall have proceeded against any other of the undersigned or any other party primarily or secondarily liable on any of the Liabilities.

Any amount received by the Bank from whatever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as the Bank may from time to time elect.

The undersigned hereby expressly waive(s): (a) Notice of the acceptance of this guaranty, (b) notice of the existence or creation of all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatsoever, and (d) all diligence in collection or protection of or realization upon the Liabilities or any thereof, any obligation hereunder, or any security for any of the foregoing.

The creation or existence from time to time of Liabilities in excess of the amount to which the right of recovery under this guaranty is limited is hereby authorized, without notice to the undersigned (or any of them), and shall in no way affect or impair this guaranty.

The Bank may, without notice of any kind, sell, assign or transfer all or any of the Liabilities, and in such event each and every immediate and successive assignee, transferee, or holder of all or any of the Liabilities, shall have the right to enforce this guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder, as fully as if such assignee, transferee or holder were herein by name specifically given such rights, powers and benefits, but the Bank shall have an unimpaired right, prior and superior to that of any such assignee, transferee or holder, to enforce this guaranty for the benefit of the Bank, as to so much of the Liabilities as it has not sold, assigned or transferred.

No delay or failure on the part of the Bank in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Bank of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy. No action of the Bank permitted hereunder shall in any way impair or affect this guaranty. For the purpose of this guaranty, Liabilities shall include all obligations of the Debtor to the Bank, notwithstanding any right or power of the Debtor or anyone else to assert any claim or defense, as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall impair or affect the obligations of the undersigned hereunder.

This guaranty shall be binding upon the undersigned, and upon the heirs, legal representatives, successors and assigns of the undersigned. If more than one party shall execute this guaranty, the term "undersigned" shall mean all parties executing this guaranty, and all such parties shall be jointly and severally obligated hereunder.

This guaranty has been made and delivered in the State of Georgia, and shall be governed by the laws of that State. Wherever possible each provision of this guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this guaranty.

IN WITNESS WHEREOF the undersigned have hereunto set their hands and affixed their seals the day and year above written.

ACCEPTED:

FIRST AUGUSTA STATE BANK
AUGUSTA, GEORGIA

By....................................................

Richard J. Veenstra 28.33% ..........(SEAL)

Robert H. Still, Jr. 28.33% ..........(SEAL)

Roger R. Rowell 15 % ..........(SEAL)