PARK CLUB, INC., Park Club Ltd., and A. Dalton Smith, Jr., Plaintiffs,

v.

RESOLUTION TRUST COMPANY, in its Corporate Capacity and as Conservator for MeritBanc Savings Association, Defendants.

Civ. A. No. H–89–1791.

United States District Court,
S.D. Texas,
Houston Division.

July 30, 1990.

Campbell Zukowski & Bresenhan, Maurice Bresenhan, Jr., Houston, Tex., for plaintiffs.

Brown, Maroney & Oaks Hartline, Walter Clay Cooke, Houston, Tex., for defendants.

## ORDER

HOYT, District Judge.

Pending before the Court are the following two motions: Defendants' Motion for Summary Judgment (instrument number 37) and Plaintiffs' Motion for Rehearing on Motion to Strike Jury Demand (instrument number 51). Having considered the motions and responses, if any, the record on file, and the applicable law, the Court is of the opinion that summary judgment for the defendants should be granted and the motion for rehearing should be denied.

## BACKGROUND

Plaintiffs, Park Club, Inc. ("PCI"), Park Club, Ltd. ("PCL"), and A. Dalton Smith ("Smith") originally filed suit against MeritBanc Savings Association ("MeritBanc") and the Federal Savings and Loan Insurance Corporation ("FSLIC") in state court seeking to recover damages and attorney's fees based on defendants' alleged breach of contract and interference with plaintiffs' contractual relationship. A declaratory judgment was also sought. The suit was filed on April 23, 1989. MeritBanc had been placed into conservatorship and the FSLIC appointed conservator in March 1989. The FSLIC removed the case to federal court in May 1989. The Resolution Trust Corporation ("RTC") was substituted in place of the FSLIC in both its corporate capacity and as conservator for MeritBanc in January 1990.

It is undisputed that in 1987 MeritBanc loaned PCI $8,250,000 for the purpose of acquiring approximately 10 acres of land and for construction of apartments and a day care center on that land. At the same time, MeritBanc loaned PCL $1,800,000 to acquire approximately 16 acres of land adjacent to PCI's property. Smith signed a guaranty agreement covering the PCI promissory note. In their causes of action, PCI and PCL alleged that MeritBanc and the FSLIC have breached the contracts by failing to provide permanent financing to PCI and interim construction financing to PCL. PCI and PCL base their causes of action primarily on the following three allegations: MeritBanc breached its letter agreement to fund the permanent loan to PCI; MeritBanc orally agreed to provide interim construction financing for later phases of the project; and FSLIC tortiously interfered with the contracts between MeritBanc and the two plaintiffs. Smith, who had signed an absolute and continuing guaranty in which he agreed to pay the promissory note signed by PCI, is seeking a declaratory judgment that MeritBanc and the FSLIC have been guilty of inequitable conduct and the agreement is therefore void and unenforceable.

The RTC, as conservator, filed a counterclaim against PCI seeking to collect $8,250,000 under the note and against Smith seeking to collect under his guarantee on the note as well as a judicial foreclosure on the Deed of Trust lien covering 10.4391 acres located in Harris County, which secured the indebtedness. In answering the counterclaim, the Plaintiffs denied that there is any default under the terms and conditions of the note, that there are no sums due as a result of Defendants' wrongful conduct and breach of the loan agreement, and that the guaranty has expired. In sum, the Plaintiffs argue that the Defendants' refusal to honor the permanent loan prevented PCI from repaying the construction loan.

## SUMMARY JUDGMENT

Defendants are seeking summary judgment on their counterclaim and contend in the motion that they are entitled to recover on the PCI note and to foreclose the Deed of Trust lien on the subject property. The ultimate question to be answered on this summary judgment motion is whether the subject agreement is unenforceable under *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and section 8.08(g) of the Texas Savings & Loan Act, Tex.Civ.Stat.Ann. art. 852a § 8.08(g) (Vernon's Supp.1990). If so, then summary judgment is proper, because Defendants have shown execution, delivery, and amount of the note.

In their motion, Defendants argue that the alleged oral agreements on interim construction financing to PCL and permanent financing to PCI are unenforceable under the Texas Savings & Loan Act and *D'Oench Duhme, supra.* They further argue that the wrong party was sued on the tortious interference claim.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is particularly applicable to suits to enforce promissory notes when execution, delivery and amount of the note are shown. *See Federal Deposit Insurance Corp. v. Willis*, 497 F.Supp. 272, 276 (S.D.Ga.1980); *see also Freeby v. North Denver Bank*, 394 F.2d 149 (5th Cir.1968).

## SUMMARY JUDGMENT EVIDENCE

■ Defendants' evidence clearly shows that they are entitled to collect on the promissory note signed by PCI. Plaintiffs, however, have submitted in opposition to the motion for summary judgment a written commitment letter that purportedly agreed to convert the interim construction loan to permanent financing. They also contend that the letter meets all the requirements of the Texas Savings & Loan Act. Defendants contend that the letter agreement was never approved by the Board of Directors. Plaintiffs, however, have also offered the deposition of James Cauley, a Board member during the relevant times, in which he testifies that the Board did not have separate processes for approving construction loans and permanent financing.

Under Plaintiffs' view, the commitment letter dated June 30, 1987 was also approved at the Board meeting of August 19, 1987. The commitment letter does reflect MeritBanc's intention to provide permanent funding. The minutes of the Board meeting, however, reflect approval of only the construction loans. According to Plaintiffs, Cauley's testimony on the Board's practices sets up a factual dispute on whether the minutes of the Board of Directors meeting reflect discussion and approval of the loans in question. This Court disagrees.

■ The minutes of the August 19, 1987 Board meeting indicate that the construction loans were approved for both PCI and PCL. The same minutes also reflect approval of permanent funding for other bank customers. The evidence, therefore, reflects that the Board of Directors approved loans for interim construction and for permanent funding. While statements as to the routine practice of an organization can be used to show that what was done in a given situation was in conformity with the routine practice, the routine practice cannot contradict evidence of what was actually done in a given situation. Additionally, before conduct is accepted as routine practice the offering party must establish that the conduct is semi-automatic in nature and not simply a tendency to act in a given manner. *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir.1988).

The evidence presented in the instant case does not make any such showing of systematic conduct. Even if the Board had a practice of specifically not approving loans based on their categorization, the evidence before this Court indicates that on the date in question, the Board departed from the routine. Furthermore, the minutes of January 23, 1989 reflect that the Board discussed a request for permanent funding by PCI, but there is no evidence that the Board approved the permanent funding. These same minutes also reflect that the request for permanent funding was made in November 1988.

■ There is no need to reach the issue of whether the letter meets the requirements of the Texas Savings & Loan Act. The letter was never approved by the Board of Directors as required by *D'Oench*, so it cannot be enforced, even if it does meet the requirements of the Texas Savings & Loan Act.

Defendants argue that Plaintiffs' defenses to the counterclaim are actually based on several alleged oral agreements, which are not discernible upon review of the

records of MeritBanc. Because the alleged agreements are not reflected in the records of the bank, they should be considered oral agreements. As a result, Plaintiffs " 'lent [themselves] to a scheme or arrangement whereby the [appropriate] banking authority ... was or was likely to be misled.' " *FDIC v. McClanahan*, 795 F.2d 512, 517 (5th Cir.1986) (quoting *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 681). Because there is no admissible evidence before this Court that the commitment letter of June 30, 1987 was ever approved by the Board, there is no evidence that Defendants agreed to more than simply provide PCI with a construction loan. Summary judgment is therefore appropriate and Defendants are entitled to recover on the promissory note that PCI signed.

Plaintiffs argue that Defendants' refusal to honor the permanent loan prevented PCI from repaying the construction loan, and Defendants are therefore prevented any recovery on the guaranty agreement. This argument is premised on the assumption that this Court will find that the underlying obligation no longer exists and therefore there can be no debt to be paid by the guaranty. As discussed above, PCI is indebted for the $8,250,000 due under the promissory note. Therefore it is a valid obligation that must be honored. Likewise, Smith's guaranty must be honored. The RTC, as Conservator, is entitled to foreclosure of all liens and security interests created by the Deed of Trust dated June 30, 1987. Moreover, there is no evidence of the expiration or termination of Smith's continuing guaranty. Only an oral agreement has been alleged on the PCL loan. Because no written evidence has been submitted, PCL has not established a valid cause of action.

■ Defendants argue that the tortious interference claim against the RTC can only be asserted to the extent allowed by Congress, because agencies of the United States cannot be sued in tort except where Congress has statutorily consented. Because the RTC is a "suable" agency of the United States and is being sued in tort, the suit must be against the United States.

*See Vernell v. United States Postal Service*, 819 F.2d 108 (5th Cir.1987). Furthermore, the suit must be brought within provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, *et seq.* and 2671 *et seq. See FSLIC v. Quinn*, 419 F.2d 1014 (7th Cir.1969).

The prerequisites to suing the United States in tort have not been met in the instant case. When the FDIC or FSLIC is acting in its corporate capacity, it is entitled to the benefit of the application of the Federal Tort Claims Act. *Godwin v. FSLIC*, 806 F.2d 1290, 1292 n. 5 (5th Cir. 1987); *Rauscher Pierce Refsnes, Inc. v. FSLIC*, 789 F.2d 313, 315 (5th Cir.1986). Because the RTC is an organization similar to, and in fact replaces the FSLIC, it is an agency of the United States. *See Godwin*, 806 F.2d at 1292 n. 5 (citations omitted). The Federal Tort Claims Act therefore must also be applied to the RTC.

It is therefore ORDERED that Defendants' motion for summary judgment on their counterclaim be, and the same is hereby, GRANTED.

It is further ORDERED that Plaintiffs' motion for rehearing is DENIED.