**UNITED STATES of America, Plaintiff,**

v.

**OWNBEY ENTERPRISES, INC., Defendant.**

**Civ. A. No. 4:91–cv–64–HLM.**

United States District Court,
N.D. Georgia,
Rome Division.

March 27, 1992.

Lynda D. Carney, U.S. E.P.A., Office of Regional Counsel, Daniel A. Caldwell, III, Office of U.S. Atty., N.D. Georgia, Atlanta, Ga., Richard B. Stewart, pro hac vice, Kenneth J. Riemer, pro hac vice, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Enforcement Section, Nancy E. Friedman, U.S. Dept. of Justice, Civil Div., Torts Branch, Washington, D.C., pro hac vice, for U.S.

Francis Edwin Hallman, Jr., Steven Macklin Mills, Decker & Hallman, Atlanta, Ga., for defendant and counter-claimant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Liability and Defendant's Motion for Summary Judgment as to all claims. Plaintiff has also filed a Motion to File a Supplemental Declaration. Defendant has not responded to this Motion and, therefore, it is unopposed and granted. LR 220–1(b)(1).

Plaintiff claims that this is a simple case where Defendant has refused to comply with a Consent Order which Defendant willingly and knowingly signed. In effect, Plaintiff wants specific performance of the Consent Order. Defendant claims, however, that (1) the statutory authority for the Consent Order is unconstitutional; (2) the Consent Order is invalid as Plaintiff did not comply with the statutory requirements for the issuance of the Consent Order and, therefore, Plaintiff did not have the authority to issue the Consent Order; and, (3) even if Plaintiff had the authority to issue the Order, questions of fact remain as to the enforceability of the Order. Furthermore, Defendant argues that the Court should use its equity powers and modify the Consent Order because the situation among the parties has substantially changed. For the reasons stated below, both motions for summary judgment are denied.

## FACTS

Defendant is a small mid-level oil company located in Dalton, Georgia. In 1982, Defendant purchased, from a third party, two 1000 gallon underground storage tanks (USTs) located at a small retail grocery store ("Deep Springs Superette") in an area known as Deep Spring, Georgia. Defendant intended to sell gasoline to the owner of the grocery store who would store the gas in these tanks and sell it to the public.

In early March 1987, a neighbor to the Superette complained to the Georgia Environmental Protection Division (EPD), who passed the complaint on to the Environmental Protection Agency (EPA), that gasoline was in his well. Consequently, the EPA investigated the complaint. On May 8, 1987, the EPA notified Defendant that a water well ("Mathis Well") located across the street from the Deep Springs Superette contained gasoline. EPA requested that Defendant determine the full extent and location of soil and groundwater contamination and submit a corrective action plan (CAP) to EPA for responding to the contamination. On June 30, 1987, Defendant notified EPA that it had replaced the two UST's with two new tanks.

After Defendant hired its own environmental engineer, Defendant notified EPA, in May 1988, that it had found benzene in the ground and that some remediation was in order. Defendant met with EPA and agreed to submit a proposal for dealing with the problem. Consequently, on November 7, 1988, the EPA sent Defendant a Consent Order to sign to ameliorate the environmental problem discovered in the area surrounding the Mathis Well. After two and a half months of negotiation, Defendant signed the Order on January 31, 1989. The order was approved and implemented on February 15, 1989.

Sometime in 1990, Defendant became more concerned about the Consent Order it previously signed and retained new legal counsel. Defendant's new legal counsel, additional environmental engineers, and Defendant's original environmental engineer discovered that EPA allegedly did not correctly investigate the contamination situation prior to Defendant signing the Consent Order. After learning about the perceived discrepancies in the EPA's investigation,[1] Defendant filed a petition for the amending of the Consent Order. EPA rejected this compromise attempt. Consequently, Defendant repudiated the Consent Order and notified EPA that it would not comply with the remaining portions of the Consent Order. EPA, in turn, filed this lawsuit demanding that the Court order Defendant to comply with the Consent Order and assess penalties against Defendant for failure to comply with the Order. Defendant counterclaimed seeking recoupment. This Court dismissed the counterclaim stating that the claim was not a proper recoupment claim. *See United States v. Ownbey Enter., Inc.,* 780 F.Supp. 817 (N.D.Ga.1991).

## SUMMARY JUDGMENT

■ Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The moving party bears the heavy burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). This burden is met by "pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548,.2554, 91 L.Ed.2d 265 (1986). This initial burden remains with the moving party even when the issue involved is one on which the non-movant will bear the burden of proof at trial. *Russ v. International Paper Co.,* 943 F.2d 589, 592 (5th Cir.1991).

■ Once the moving party has fulfilled its burden and shown that no factual issues exist which could warrant a trial, the burden shifts to the non-movant to come forward with specific facts showing that a genuine dispute still does exist. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Clark v. Coats & Clark Inc.,* 929 F.2d 604 (11th Cir.1991). This burden shifts back to the non-moving party, however, only after the moving party meets its initial burden and shows that no factual issues remain for trial. *Russ,* 943 F.2d at 592. If the moving party does not meet its initial burden, the non-movant is not obligated to put forward additional evidence.

■ The District Court's duty is to view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wain-*

---

1. Defendant makes several allegations concerning the EPA's behavior during the initial investigation into this matter. First, Defendant claims that the EPA withheld valuable information concerning the existence of other possible sources for the contamination. Defendant claims that had it known of these other sources it would not have signed the Order. Second, Defendant claims that the EPA did not follow its own operating procedures for conducting an investigation into a contamination of this type. Finally, Defendant claims that it has uncovered new evidence which demonstrates that its tanks could not have been the source of the contamination.

*wright,* 718 F.2d 1538, 1543 (11th Cir.1983). In deciding a motion for summary judgment, it is not the Court's function to decide issues of genuine material fact. Rather, the Court's function is to determine whether such an issue exists to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983). It is the applicable substantive law which will identify what facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Facts which in good faith are disputed, but which do not resolve or affect the outcome of the suit will not properly preclude the entry of summary judgment. *Id.* In short, such facts are not material. The materiality of a fact rests solely on the governing substantive law. A district court "can only grant summary judgment 'if everything in the record ... demonstrates that no genuine issue of material fact exists.' " *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir.1986) (quoting *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980)).

█ Genuine disputes are those where the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Moreover, for factual issues to be "genuine" they must have a real basis in the record. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* at 586, 106 S.Ct. at 1356 (citations omitted.) "[T]his standard mirrors the standard for a directed verdict.... [T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

## THE CONSENT ORDER

As stated above, Defendant was first notified about a possible gasoline leak at the Deep Springs Superette in May 1987. In January 1989, Defendant signed a Consent Order whereby it agreed to remedy the situation and eliminate the contamination. During this time span, Defendant was represented by counsel and even employed its own environmental engineer to investigate the source of the contamination. Defendant was also aware, prior to its signing of the Consent Order, that other possible sources for the contamination existed and that its tanks may not have been the source of the contamination. *See Plaintiff's Exhibit 14.* (Letter from Defendant to EPA informing EPA of other possible sources and raising question as to source of contamination.) Now, over a year after the Consent Order has been in effect, Defendant, with the help of new counsel, is challenging the validity of the Consent Order which it signed.

First, Defendant claims that the Consent Order is invalid because the authorizing legislation is unconstitutional as it infringes on Defendant's due process rights. Defendant claims that its due process rights have been violated because it does not have the ability to challenge the validity of the Consent Order without the threat of enormous monetary fines. Defendant cites *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and its progeny for the proposition that the threat of exorbitant fines is a due process violation because it inhibits Defendant's ability to challenge the validity of the Consent Order even if the challenge is in good faith. Although Defendant correctly summarizes what *Ex Parte Young* and its progeny stand for, those cases have no application to the case at bar.

█ Defendant's argument totally ignores the type of Order that is involved in this case. This case involves a *Consent* Order that Defendant participated in drafting and which Defendant knowingly signed. It is not an order which EPA unilaterally issued and then threatened to impose fines if Defendant did not follow.

*See* 42 U.S.C. §§ 6991b(h)(2), 6991e(a)(1) & 6991e(a)(3). It is a Consent Order which was agreed to by both parties. It goes beyond cavil to state that Defendant's due process rights were violated when Defendant had over two months to challenge the Consent Order before it knowingly signed the agreement. Furthermore, Defendant expressly waived its right to use the due process components of the authorizing statute when it signed the Order. *See Consent Order* ¶ 11. In addition, the ability to levy fines and the amount of the fines imposed comes from the Consent Order itself, not 42 U.S.C. § 6991e(a)(3). *See Consent Order* ¶ 20.

Defendant next argues that Plaintiff did not comply with the applicable statutory and regulatory requirements prior to the EPA's approval of the Consent Order. Defendant contends that fulfillment of the statutory requirements are a condition precedent to the EPA having the authority to enter the Order. Without the fulfilling of these requirements, Defendant continues, the Consent Order is beyond the authority of the EPA and, therefore, it is void. Plaintiff argues, however, that Defendant waived its challenge to EPA's authority to enter this Order when Defendant signed the Order.

Again, Defendant misconstrues the type of agreement at issue in this case. This case concerns a Consent Order entered into by the EPA and Defendant in lieu of the EPA issuing a unilateral order under 42 U.S.C. § 6991 *et seq.* "Consent decrees [and orders] are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation.... For these reasons, the scope of a consent decree [or order] must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). This means that "consent decree[s] or order[s] [are] to be construed for enforcement purposes basically as a contract." *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1974). As with all contracts the Court can rely on certain aids to help determine the proper construction of the contract. *Id.* "Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree." *Id.*

 The Consent Order in the case at bar specifically states that it is issued pursuant to the EPA's authority under 42 U.S.C. §§ 6991b(h) & 6991e(a). From this language one might conclude that the parties intended that the requirements under those statutes were prerequisites to the issuance of this Consent Order. However, any questions as to the fulfillment of the statutory requirements were waived in ¶ 11 of the Consent Order. Paragraph 11 states: "Ownbey admits to EPA's jurisdiction regarding this Consent Order and agrees to waive its right to a hearing under ... 42 U.S.C. § 6991b(e) ... and its right to appeal this Consent Order under CROP [40 C.F.R. Part 22, Subpart F]; provided, however, Ownbey does not waive any rights it has with respect to discretionary determinations made by EPA pursuant to the terms of this Consent Order." *Consent Order* ¶ 11. This Court concludes that Ownbey's admission as to EPA's jurisdiction acts as an acceptance by Ownbey that all necessary conditions precedent to the issuance of this Order have been fulfilled.[2] Consequently, Defendant is barred by its previous conduct from challenging EPA's

---

2. Defendant also makes the argument that the reservation of rights to challenge the EPA's discretionary determinations applies to the EPA's decision to agree to the Order. As such, Defendant argues that it can challenge EPA's initial decision to agree to the Consent Order. The reservation of rights concerning the EPA's discretionary determinations, however, applies only to actions taken in fulfillment of the Consent Order, it does not apply to the EPA's initial judgment to enter the Consent Order.

fulfillment of any alleged condition precedent to this Consent Order.

Defendant also argues that the EPA acted arbitrarily and capriciously when it failed to conduct a proper investigation and when it agreed to enter into the Consent Order. *See* 5 U.S.C. 706(2)(A); *Port of Jacksonville v. U.S. Coast Guard,* 788 F.2d 705 (11th Cir.1986). "A court reviewing a decision of an administrative agency must uphold the judgment of the agency unless a review of the administrative record discloses that the decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 708 (citation omitted).

█ Here, it stretches credulity to say that the EPA abused its discretion when it agreed to this Consent Order. The EPA discovered that the area surrounding the Mathis Well was contaminated by gasoline. The EPA then notified the most logical source of that contamination, Ownbey Enterprises. Ownbey conducted its own investigation and informed EPA that it also found some contamination and that "some remediation is in order." *Plaintiff's Exhibit* 5 (letter from Defendant's environmental engineer to EPA). Due to this admission, EPA could have assumed that Ownbey was the source of the contamination or else it would not have volunteered to remediate the problem. Consequently, the parties agreed to the Consent Order. This decision to issue a Consent Order with a willing party instead of spending time and money to investigate other, maybe non-existent, sources is clearly within the discretion of the EPA and is neither arbitrary or capricious.

## CONTRACT DEFENSES

Defendant asserted numerous affirmative defenses in its answer to Plaintiff's complaint: statute of limitations, laches, waiver, estoppel, unconscionability, duress & coercion, fraud, accord & satisfaction, failure to extinguish administrative process and unclean hands. In addition, Defendant has raised the additional affirmative defenses of mistake and changed circumstances in various portions of its pleadings.

█ Plaintiff claims that once it establishes that the contract is presumptively valid, like Plaintiff claims it has, the burden shifts to Defendant to show the existence of questions of material fact as to its affirmative defenses. Defendant argues, however, that the burden remains on Plaintiff to show the absence of material facts as to the affirmative defenses, before Defendant has to come forward with evidence which tends to show that questions of material fact exist as to his affirmative defenses.

This Court agrees with Defendant. "Simply filing a summary judgment motion does not compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every aspect of its case." *Russ v. International Paper Co.,* 943 F.2d 589, 591 (5th Cir.1991). In this Circuit, the *Adickes* rule still applies. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Consequently, "[t]he moving party bears the burden to show the district court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial." *Id.* This initial burden remains with the moving party even when the issue involved is one on which the non-movant will bear the burden of proof at trial. *Russ,* 943 F.2d at 592. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.... [I]t is never enough simply to state that the non-moving party cannot meet its burden at trial." *Coats & Clark,* 929 F.2d at 608.

Here, the burden is on Plaintiff, as the moving party, to show the absence of evidence which supports an essential element as to each of Defendant's affirmative defenses, before Defendant even has to come forward with evidence establishing that a material question of fact exists as to those defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91

L.Ed.2d 265 (1985).[3] As Plaintiff has failed to carry its burden in relation to most of Defendant's affirmative defenses, its motion for summary judgment is denied.[4]

Plaintiff addressed four of the affirmative defenses in its motion for summary judgment: economic duress, fraud in the inducement, mistake and changed circumstances.

■ 1. *Duress.* Duress either by threats or other acts, by which the free will of the party is retrained and his consent induced renders the contract voidable at the election of the injured party. *Ryder Truck Lines, Inc. v. Goren Equip. Co.,* 576 F.Supp. 1348, 1355 (N.D.Ga.1983). "However, economic pressure is insufficient to constitute duress in the legal sense." *Id.* "One may not void a contract on the grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement." *Tidwell v. Critz,* 248 Ga. 201, 204, 282 S.E.2d 104 (1981).

■ Here, Plaintiff has shown that Defendant had a very viable option of not agreeing to the Consent Order. Such action would have forced the EPA to follow its guidelines and issue an unilateral order to force Ownbey to clean up the contamination. Ownbey then could have contested the unilateral order in a judicial proceeding and had the opportunity to show that its tanks were not the cause of the petroleum release. Therefore, Defendant had two very clear alternatives to choose from and, consequently, was not the victim of duress when it chose to agree to the Consent Order.

■ In addition, the possibility of the imposition of fines cannot be considered a form of duress or coercion because (1) the amount of the fines levied lies in the discretion of the Court, and (2) the only way the fines could have been imposed was after the EPA's unilateral order was judicially upheld, and Ownbey then still refused to comply with the order. *See* 42 U.S.C. § 6991e(a)(3). Failure on Defendants part to investigate EPA's authority in this regard cannot be considered duress of any type. *See Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 875–76 (5th Cir.1984) (it is not duress to threaten to do what one has a legal right to do); *Chouinard v. Chouinard,* 568 F.2d 430 (5th Cir.1978) (not duress to bring or threaten to bring a civil suit). Consequently under Federal Rule of Civil Procedure 12(f) this Court strikes Defendant's affirmative defense of duress and coercion.

■ 2. *Fraud in the Inducement.* "Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to a material fact, must be false and must be acted upon by the other party in ignorance of its falsity and with reasonable belief that it was true. It must be the very ground on which the transaction took place...." *F.D.I.C. v. Willis,* 497 F.Supp. 272, 279 (S.D.Ga.1980) (citation omitted). *See also Ryder Truck Lines, Inc. v. Goren Equipment Co.,* 576 F.Supp. 1348, 1357 (N.D.Ga.1983).

Here, Defendant claims it was the victim of fraud because the EPA improperly investigated the contamination and informed Defendant that Defendant was responsible for the contamination when EPA knew that other sources might exist. Defendant continues by stating that but for EPA's insis-

3. The Court is aware that other district courts do not agree with this conclusion. *See Northwestern Nat'l Ins. v. Alberts,* 769 F.Supp. 498, 511 (S.D.N.Y.1991); *Harper v. Delaware Valley Broadcasters, Inc.,* 743 F.Supp. 1076, 1090 (D.Del.1990), *aff'd,* 932 F.2d 959 (3rd Cir.1991). Both of these cases, however, rely on an interpretation of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which the Eleventh Circuit has directly disa-

greed with. *See Coats & Clark,* 929 F.2d at 607 ("*Celotex* is the most notable, not because it significantly changed summary judgment law, but because it is so commonly misunderstood and misapplied.").

4. Plaintiff has not addressed any of the other defenses which Defendant asserted; therefore, summary judgment would be inappropriate at this time.

tence that Defendant's tanks were the source of the petroleum release Defendant would not have signed the Consent Order. However, Plaintiff has clearly shown that Defendant knew of the existence of other possible sources and that Defendant even had doubts concerning its designation as the source of the contamination. Consequently, Defendant could not have been the victim of fraud as it was not ignorant of the possibility that it was not responsible for the release. Moreover, Defendant's own investigation showed that it might be responsible for the contamination. Furthermore, Defendant was represented by counsel who could have and should have investigated the EPA's authority and the possible consequences involved in this type of situation; therefore, Defendant did not justifiably rely on Plaintiff's statements concerning the legal consequences of not remedying the contamination problem. Pursuant to FED.R.CIV.P. 12(f), the Court strikes the defense of fraud.

3. *Mistake.* Plaintiff claims that Defendant waived this affirmative defense as it did not affirmatively plead it in its answer or counterclaim, nor did Defendant state with particularity the circumstances constituting the mistake. FED.R.CIV.P. 8 & 9. This Court agrees and strikes the defense of mistake. FED.R.CIV.P. 12(f). In the answer, Defendant stated that it was the victim of fraudulent misrepresentations and that EPA improperly investigated the contamination. However, not until after the initial pleadings were filed did Defendant allege that it signed the agreement under a mistake of present fact. *See Henry v. Thomas,* 241 Ga. 360, 245 S.E.2d 646 (1978).

4. *Changed Circumstances.* This defense is actually another mechanism to try and invoke the Court's equity powers to modify the Consent Order. Accordingly, the Court will treat this defense when it discusses the Court's equity power.

## EQUITY

Defendant requests that this Court use its equity powers and modify the Consent Order so that Defendant only has to remediate the contamination it caused. Specifically, Defendant states that it can prove that its tanks were not the cause of the leaks. Although the defense of mistake has been stricken as a complete bar to this action, equity may require that the Order be modified if circumstances surrounding the situation have significantly changed. *See Chrysler Corp. v. United States,* 316 U.S. 556, 62 S.Ct. 1146, 86 L.Ed. 1668 (1943). However, the Defendant bears a very heavy burden to justify modification of the agreement. *Paradise v. Prescott,* 767 F.2d 1514 (11th Cir.1985). The Court is unwilling, at this juncture, to state as a matter of law that this situation is not one of those extraordinary situations that allow modification of a consent agreement. Defendant has introduced some evidence that tends to show that it is not responsible for any, let alone a partial, amount of the contamination. The Court understands that Plaintiff's objective is to initiate the cleanup and remediation of any contamination it finds and that it is not as interested in finding all the guilty parties as long as it finds one of the guilty parties. However, if Ownbey can prove to the Court that it is not at all responsible for any of the contamination, equity could dictate that the agreement be modified so as to not force Ownbey to remedy a problem it did not create.

Accordingly, the Court GRANTS Plaintiff's Motion to file a supplemental declaration and DENIES both Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.